IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
BROOKE OLIVIA HILL, as duly      )
appointed Administratrix of      )
the Estate of                    )
Camden Rivers Maynard,           )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    1:23-cv-479
                                 )
ORLANDO MAYNARD, individually    )
and officially, and TOWN OF      )
ELON, NORTH CAROLINA,            )
                                 )
          Defendants.            )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a motion to dismiss filed by Defendant Orlando Maynard ("Maynard" or "Defendant Maynard"), (Doc. 28), and a motion to dismiss filed by Defendant Town of Elon ("Elon" or "Defendant Elon"), (Doc. 26). For the reasons stated herein, Defendant Maynard's motion will be granted, and Defendant Elon's motion will be granted.

I. **FACTUAL BACKGROUND**

The facts as set out in the Amended Complaint will not be restated here in detail but instead will be addressed where necessary in the analysis. In summary, Plaintiff, mother of the decedent and administratrix of the decedent's estate, alleges

that Defendant Maynard, a police officer with the Town of Elon, stored his service handgun in a location where Plaintiff and Defendant's three-year-old child, C.M., could access the weapon. On June 16, 2021, C.M. accessed the weapon, accidentally shot himself, and tragically died as a result. Plaintiff has asserted claims under 42 U.S.C. § 1983 against Maynard and the Town of Elon. Plaintiff has also asserted state law claims against Maynard.

## II. PROCEDURAL HISTORY

Plaintiff filed her Complaint on June 15, 2023. (Complaint ("Compl.") (Doc. 1).) Plaintiff filed an Amended Complaint on November 21, 2023. (Amended Complaint ("Am. Compl.") (Doc. 18).) In her Amended Complaint, Plaintiff brings the following claims: 1) a 42 U.S.C. § 1983 claim against Defendant Maynard, (id. ¶¶ 170–84), 2) a 42 U.S.C. § 1983 Monell claim against Defendant Elon, (id. ¶¶ 185–220), 3) a N.C. Gen Stat. § 28A-18-2(b) wrongful death claim against Defendant Maynard, (id. ¶¶ 221–25), and 4) a claim under the North Carolina Constitution against Defendant Maynard, (id. ¶¶ 226–30). Jurisdiction is based upon 28 U.S.C. § 1331 as to the § 1983 claims. (Id. ¶ 8.) Plaintiff alleges supplemental jurisdiction as to the state law claims. (Id.)

Defendant Elon filed the operative motion to dismiss on December 27, 2023, (Def. Mot. to Dismiss for Failure to State a Claim ("Def. Elon Mot.") (Doc. 26)), along with a supporting memorandum of law, (Def. Mem. of Law ("Def. Elon Mem.") (Doc. 27)). Defendant Maynard filed the other operative motion to dismiss on January 5, 2024, (Def. Mot. to Dismiss for Failure to State a Claim ("Def. Maynard Mot.") (Doc. 28)), along with a supporting memorandum of law, (Def. Mem. of Law ("Def. Maynard Mem.") (Doc. 29)).

Plaintiff responded in opposition to Defendant Elon's Motion on January 17, 2024, (Pl. Resp. in Opp'n to Def. Elon Mot. ("Pl. Resp. to Def. Elon") (Doc. 30)), and Defendant Elon replied on January 30, 2024, (Def. Reply to Pl. Resp. in Opp'n ("Def. Elon Reply") (Doc. 33)). Plaintiff responded in opposition to Defendant Maynard's Motion on February 2, 2024, (Pl. Resp. in Opp'n to Def. Maynard Mot. to Dismiss ("Pl. Resp. to Def. Maynard") (Doc. 34)), and Defendant Maynard replied on February 16, 2024, (Def. Reply to Pl. Resp. in Opp'n ("Def. Maynard Reply") (Doc. 35)).

### III. STANDARD OF REVIEW

#### A. Failure to State a Claim

Defendants Maynard and Elon both move to dismiss Plaintiff's Amended Complaint for failure to state a claim upon

- 3 -

which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When ruling on a motion to dismiss, this court must accept the complaint's factual allegations as true. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). However, this court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

## IV. ANALYSIS

### A. Plaintiff has not sufficiently alleged a 42 U.S.C. § 1983 claim against Defendant Maynard.

Plaintiff alleges that Defendant Maynard deprived C.M. of his Fourteenth Amendment substantive due process rights "to life" and to "be free of state created danger" by storing his unholstered, loaded service weapon in an "unlocked gun safe" at home, where C.M. could access and discharge it. (See Am. Compl. (Doc. 18) ¶¶ 95, 174–79.) Plaintiff seeks recovery for this alleged constitutional deprivation via 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983; see also Zinermon v. Burch, 494 U.S. 113, 125 (1990) (noting that substantive due process deprivations are actionable under § 1983). Defendant Maynard moves to dismiss this claim, arguing that Plaintiff has failed

to state a claim for relief under § 1983. (See Def. Maynard Mem. (Doc. 29) at 3.)[1]

To state a claim for relief under § 1983, a plaintiff must allege "that some person has deprived him of a federal right" and "that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980). Defendant Maynard argues that Plaintiff has not alleged sufficient facts to support the conclusion that he was 1) acting under color of state law, nor that he 2) deprived C.M. of a federal right.

### 1. **Plaintiff has not alleged sufficient facts to support a finding that Defendant Maynard acted under color of state law.**

Whether an individual acts under color of state law is a question of law for the court to decide. Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 344 n.7 (4th Cir. 2000). At the motion to dismiss stage, this court must evaluate whether Plaintiff has alleged sufficient facts to support the legal conclusion that Defendant Maynard acted under color of state law

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

when he stored his loaded service weapon where C.M. could access it.

The distinction between private action and state action is not precise, and "the inquiry is highly fact-specific in nature." Peltier v. Charter Day Sch., Inc., 37 F.4th 104, 116 (4th Cir. 2022).[2] Yet, "[t]he most important consideration is the nature of the act performed," White v. City of Greensboro, 532 F. Supp. 3d 277, 309–10 (M.D.N.C. 2021) (citing Revene v. Charles Cnty. Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989)), and whether it has a "sufficiently close nexus with the State," Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).

In determining whether the action at issue bears a "sufficiently close nexus with the state," courts have considered whether a public official's actions arose out of public or personal "circumstances." See Rossignol, 316 F.3d at 523–24. In Rossignol, the Fourth Circuit found that the defendants, a group of police officers, acted under color of state law when they engaged in an organized plot to suppress

---

[2] The "under color of state law" analysis mirrors the state action analysis of the Fourteenth Amendment. See Tann v. Ludwikoski, 393 F. App'x 51, 53 (4th Cir. 2010) ("There is no distinction between state action and action under color of state law."); Howard v. Food Lion, 232 F. Supp. 2d 585, 596 (M.D.N.C. 2002).

distribution of a publication. Id. at 523. Although the officers were not on duty and did not wear badges, their actions arose from a desire to censor those "who questioned their fitness for public office." Id. at 523–24. The Fourth Circuit concluded that these actions "arose out of public, not personal, circumstances" because it was the officers' intention to "suppress speech critical of [their] conduct of official duties." Id. at 524.

On the other hand, actions that arise out of "purely personal circumstances" are less likely to bear a sufficiently close nexus to the state for color of law purposes. See id. at 524. For example, in Martinez v. Colon, a police officer harassed and accidentally shot and maimed a fellow officer. 54 F.3d 980, 982 (1st Cir. 1995). Although the assailant was on duty and in uniform, the First Circuit found he did not act under color of state law because his actions arose from "a singularly personal frolic: tormenting an acquaintance." Id. at 987.

After reviewing the Amended Complaint and relevant caselaw, this court finds that Plaintiff has not sufficiently alleged that Defendant Maynard acted "under color of state law," as required by § 1983, for several reasons that are analyzed in further detail below. First, the option for an officer to store a service firearm at home was permitted but not mandated by the

Elon Police Department, and the Department's policy regarding safe storage was not a "duty" inherent to Maynard's status as a police officer. Next, Defendant Maynard's chosen manner of storage was motivated by the private aim of protecting his home and family, resulting in his purely personal decision to store his service weapon in a manner that allowed for quick access in the home and not because of his job responsibilities. Finally, the storage of a firearm in the home is a right and privilege of all law-abiding citizens, and the injury resulting here was not caused by virtue of Defendant Maynard's status as a public official.

Regarding the first point, Plaintiff's argument that the safe storage of Defendant Maynard's firearm was a "duty" inherent to his office stretches the meaning of the word by attempting to equate the government's provision of a firearm with the steps required to safely store the firearm when not in use for any governmental purpose. Maynard was permitted, but not required, to bring his firearm home. (Am. Compl. (Doc. 18) ¶ 45 ("The Town had a long-standing custom that <u>allowed</u> its police officers to leave one service weapon at home even while on duty." (emphasis added)).) If he chose to bring it home, Elon Police Department explained that it must be stored safely. (<u>See</u> Elon Police Dept. Policy Manual 305.5.2: Storage at Home (Doc.

18-3) at 5.) Safe storage was not an independent duty unique to police officers, but rather mirrored the duty of safe gun storage imposed on the community at large, as seen by the Elon Police Department's cross-reference to N.C Gen. Stat. § 14-315.1 ("Storage of firearms to protect minors") within the safe storage policy. Id. In other words, Defendant Maynard's duty to store his firearm safely is a duty established by state statute for all individuals possessing a firearm in the home, and his governmental position had no effect on that duty.

Next, even though Defendant Maynard's weapon and bullets were issued by the Town of Elon, "[t]he circumstances surrounding the use of a service revolver, rather than the mere fact of its use, have constitutional relevance." Payne v. Gov. of D.C., 559 F.2d 809, 825 n.9 (D.C. Cir. 1977); see also Revene, 882 F.2d at 873 (quoting Payne in dicta).[3] The context surrounding Defendant Maynard's planned use of the service weapon supports the conclusion that his storage of the weapon was a "personal pursuit" that is "plainly excluded" from the scope of state action. See Screws v. United States, 325 U.S. 91,

---

[3] In Revene, the Fourth Circuit also quoted Payne in dicta for the following: "Surely one could not reasonably maintain that an off-duty police officer whose revolver accidentally discharged and hurt someone was acting under color of governmental authority." See Revene, 882 F.2d at 872-73 (quoting Payne, 559 F.2d at 825 n.9).

111 (1945); see also Rossignol, 316 F.3d at 524. Defendant Maynard's history of gun storage methods, as outlined in Plaintiff's amended complaint, shows that he was determined to keep the weapon nearby and ready to be discharged. (See Am. Compl. (Doc. 18) ¶¶ 87, 91, 94; see also id. ¶ 106 (alleging that Defendant Maynard told C.M.'s mother that the gun safe "was okay" but that he still kept one of his service weapons "under the mattress so that he had quicker access to it").) The Complaint fails to allege facts that might explain how this activity in the home constitutes state action. Defendant Maynard's storage of the weapon in his home, as alleged here, is personal action.

Additionally, Plaintiff does not allege, nor do the facts show, that the Town of Elon's permissive policy requires officers who choose to store service weapons at home to have them loaded and ready for any unexpected police-related "state action." Notably, in a text message Maynard sent to Plaintiff following the death of their son, he stated "the only reason [the gun] was not in the closet and [was] in the safe is so I could get to it if something happened or somebody tried to break in." (Doc. 18-7.) Plaintiff has alleged no facts to support a contention or an inference that a loaded firearm in the home bears any relationship to Defendant Maynard's state duties.

- 11 -

Instead, the facts support a reasonable inference that Maynard's keeping of a loaded firearm readily accessible in the home was done with a deliberate personal motivation, separate from his state duties.

Finally, state action requires that the defendant has "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Davison, 912 F.3d at 679 (internal quotation marks and citations omitted). Put differently, "challenged conduct is more likely to amount to state action when 'the injury caused is aggravated in a unique way by the incidents of governmental authority.'" Id. at 680 (quoting Goldstein, 218 F.3d at 343).

Perhaps, in a strict "but-for cause" sense, it is true that C.M.'s death would not have occurred without Defendant Maynard's receipt of the service weapon/ammunition and the Town's permission to store it at home. But the state action inquiry looks instead for injuries that could have only been caused by virtue of the defendant's status as a public official. See Lindke v. Freed, 601 U.S. 187, 198 (2024) ("[S]tate action exists only when the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." (internal quotation marks omitted)). In this case,

even without his status as a police officer, Defendant Maynard could have owned and kept a weapon at home. He could have loaded it and stored it somewhere C.M. could or could not have accessed it, depending upon his personal decision, not state action. See Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261 (11th Cir. 2012) (noting that "although [the defendant] did use the pistol that she wore as an officer, any adult without a felony record can lawfully possess a firearm (and tens of millions do)."). Although undeniably tragic, C.M.'s death was not made possible only because Defendant Maynard was employed by the Town of Elon.

Because this court finds that Plaintiff has not alleged sufficient facts to support a finding that Defendant Maynard acted under color of state law, Plaintiff's § 1983 claim against Maynard fails.[4]

### B. **Plaintiff's § 1983 Monell Claim against Town of Elon must fail, as there is no state action.**

Municipalities may be sued under § 1983 for "monetary, declaratory, or injunctive relief." Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). However, a municipality may not be held liable "solely because it employs a tortfeasor." Id. at 691. As a result, to successfully allege a §

---

[4] Because state action is required for a § 1983 claim, it is therefore, unnecessary to reach the question of whether Plaintiff has sufficiently alleged a constitutional deprivation.

1983 claim against a locality, a plaintiff must allege that the constitutional tort was done in "execution of a government's policy or custom." Id. at 694.

In this case, there is no constitutional tort because Defendant Maynard did not act under color of state law. Without an underlying constitutional tort, municipal liability must fail. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("[The city and its police commission] were sued only because they were thought legally responsible for [police officer's] actions; if the latter inflicted no constitutional injury on respondent, it is inconceivable that [the city and its police commission] could be liable to respondent."); see also Claudio v. Sawyer, 675 F. Supp. 2d 403, 410 (S.D.N.Y. 2009), aff'd, 409 F. App'x 464 (2d Cir. 2011) ("The [municipality] is not liable under Monell for the private acts of its

employees."). Accordingly, the Monell claim against Town of Elon must be dismissed.[5]

C. **Plaintiff's State Law Claims**

Plaintiff also pursues two North Carolina state law claims: a claim for wrongful death, (Am. Compl. (Doc. 18) ¶¶ 221–25), and a claim under Article I, Section 19 of the North Carolina Constitution, (Id. ¶¶ 226–30). These claims are before this court pursuant to supplemental jurisdiction, as they arose from

---

[5] Even assuming, arguendo, that Defendant Maynard did deprive C.M. of his constitutional rights under color of state law, Defendant Elon still would not be liable under § 1983. Municipal liability requires that the action was done in execution of a "policy or custom." Monell, 436 U.S. at 694. Plaintiff argues that the "policy" here was Town of Elon's failure to train and/or failure to supervise Defendant Maynard in the safe storage of his service weapon. (Am. Compl. (Doc. 18) ¶ 186). This "policy or custom" by omission is a cognizable theory of municipal liability, so long as a plaintiff can show that either 1) "policymakers were aware of, and acquiesced in, a pattern of constitutional violations," Lytle v. Doyle, 326 F.3d 463, 474 (4th Cir. 2003), or 2) there was an "obvious" need for more training or supervision, see City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989). Plaintiff has not alleged a "pattern" of officers storing their service weapons at home where their children can access and discharge them. Further, Plaintiff has not demonstrated that there was an obvious need for further training or supervision. At least as framed in the Amended Complaint, C.M.'s death "is an isolated incident . . . that cannot fall into the Canton [obvious need] exception, because [the city] did have [a] . . . policy, and [plaintiff] has not shown how or why that policy is deficient—except by pointing to this single incident." See Est. of Jones by Jones v. City of Martinsburg, W.Va., 961 F.3d 661, 672 (4th Cir. 2020); see also Elon Police Dept. Policy Manual 305.5.2: Storage at Home (Doc. 18-3) at 5 (outlining the department's "storage at home" policy).

- 15 -

the same "case or controversy" as Plaintiff's § 1983 claims, see 28 U.S.C. § 1367(a), and are based on a common set of facts, see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (requiring state and federal claims to "derive from a common nucleus of operative fact").

"The district courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." Banks v. Gore, 738 F. App'x 766, 773 (4th Cir. 2018).

Because this court has dismissed all federal claims, it declines to exercise supplemental jurisdiction. Accordingly, Plaintiff's two state law claims are dismissed without prejudice.[6]

## V. CONCLUSION

For the foregoing reasons, Defendant Maynard's Motion to Dismiss, (Doc. 28), will be granted and those claims will be

---

[6] Defendant Maynard moved to dismiss these state law claims pursuant to Rule 12(b)(1). (Def. Maynard Mot. (Doc. 28) at 2). Because this court is declining to exercise supplemental jurisdiction over them, this argument is moot.

dismissed. Furthermore, Defendant Elon's Motion to Dismiss, (Doc. 26), will be granted and those claims will be dismissed. The claims brought pursuant to 42 U.S.C. § 1983 against Defendant Maynard and Defendant Elon are dismissed with prejudice. All remaining claims brought pursuant to state law against Defendant Maynard are dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Defendant Maynard's Motion to Dismiss, (Doc. 28), is **GRANTED**. The First Cause of Action alleging a claim pursuant to 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**. The Third Cause of Action and Fourth Cause of Action are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant Town of Elon's Motion to Dismiss, (Doc. 26), is **GRANTED** and the Second Cause of Action alleging a claim pursuant to 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

A judgment dismissing this action is filed contemporaneously herewith.

This the 30th day of September, 2024.

_____
United States District Judge